1

2

3

4

THE HONORABLE THOMAS S. ZILLY

5

6

7

8

9

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

| | |
|---|---|
| JEFF SHERRILL, on behalf of himself and a class of those similarly situated, | NO.  2:10-cv-00590-TSZ |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND AWARD OF CLASS REPRESENTATIVE SERVICE PAYMENT; MEMORANDUM IN SUPPORT OF MOTION** |
| v. | |
| PREMERA BLUE CROSS; LIFEWISE HEALTH PLAN OF OREGON; and LIFEWISE ASSURANCE CO., | |
| Defendants. | Date:        June 10, 2011<br>Time:        10:00 a.m.<br>Courtroom:  15206<br>Judge:       Thomas S. Zilly |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 10, 2011 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 15206 of this Court, located at 700 Stewart Street, Seattle, Washington, Plaintiff Jeff Sherrill ("Plaintiff") will, and hereby does, move this Court for an award of $362,500 in attorneys' fees, reimbursement of $13,206 in costs and expenses, and a Class Representative service payment of $5,000.

2:10-cv-00590-TSZ
918123.3

- 1 -

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

As more fully discussed in the following memorandum in support of the motion, this motion is made on the grounds that the requested fee award is reasonable under the common fund doctrine, as it represents 25% of the settlement fund, the Ninth Circuit's benchmark for common fund awards.  In addition, the requested fee is appropriate under the lodestar cross-check method. Furthermore, the very modest costs incurred are also reasonable.  Lastly, the requested service payment is reasonable and consistent with the applicable Ninth Circuit authority.

The motion is based on this notice; the following memorandum in support of the motion; the memorandum in support of the unopposed motion for preliminary approval and its supporting declaration (Docket. Nos. 34 & 35); the First Amended Joint Stipulation of Class Settlement and Settlement Agreement and Release ("Settlement Agreement," available at Docket No. 35, Exhibit 1); the Declaration of Jahan C. Sagafi in Support of Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Award of Class Representative Service Payment; the Declaration of Michael C. Subit in Support of Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Award of Class Representative Service Payment; the Court's record of this action; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

Dated:  April 14, 2011    Respectfully submitted,

            Kelly M. Dermody (*admitted pro hac vice*)
            Jahan C. Sagafi (*admitted pro hac vice*)
            Anne B. Shaver (*admitted pro hac vice*)
            LIEFF CABRASER HEIMANN & BERNSTEIN LLP

            Michael C. Subit (Wash. Bar No. 29189)
            FRANK FREED SUBIT & THOMAS LLP

            By:  __*/s/ Jahan C. Sagafi*_____
               Jahan C. Sagafi

            *Attorneys for Plaintiff and the Class Members*

2:10-cv-00590-TSZ
918123.3

-2-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

# TABLE OF CONTENTS

Page

MEMORANDUM IN SUPPORT OF MOTION ................................................................. 1

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................. 2

    A.  Class Counsel Carefully Analyzed The Case Before Beginning Settlement Negotiations. ........................................................... 2

    B.  The Settlement Is Highly Beneficial To The 133 Class Members.............. 4

    C.  Class Counsel Devoted Substantial Time and Resources To This Litigation. ............................................................................... 5

    D.  Class Member Response To The Settlement And The Requests for Fees, Costs, And A Service Award Has Been Overwhelmingly Positive. ................................................................................. 5

III.  ARGUMENT ...................................................................................... 6

    A.  Counsel Are Entitled To an Award of Attorneys' Fees Out of the Common Fund. ....................................................................... 7

        1.  The Equitable Common Fund Doctrine Applies When, As In This Case, The Litigation Has Recovered A Certain And Calculable Fund On Behalf Of A Group Of Beneficiaries. ........... 7

        2.  The Fee Award Should Be Calculated As A Percentage Of The Common Fund. ............................................................. 8

    B.  The Requested Fee Award Equals the 25 Percent Benchmark Established By The Ninth Circuit. ........................................... 9

    C.  The Requested Fee Award Is Reasonable. ................................... 10

    D.  The Requested Fees Are Reasonable Under A Lodestar Crosscheck. ....... 12

        1.  Time And Labor Required .......................................... 13

        2.  The Novelty And Difficulty Of The Questions Involved ............. 14

        3.  The Requisite Legal Skill Necessary ............................... 15

        4.  The Preclusion of Other Employment ............................. 15

        5.  The Customary Fee ................................................. 15

        6.  Whether the Fee is Contingent ..................................... 16

        7.  Additional Factors .................................................. 16

    E.  Class Counsel Are Entitled To Recover Their Out-of-Pocket Expenses, Which Are Reasonable And Have Inured To The Benefit Of The Class. ....................................................................... 17

    F.  The Requested Class Representative Service Award is Reasonable. ....... 18

IV.   CONCLUSION .................................................................................. 20

2:10-cv-00590-TSZ
918123.3

- i -

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

-i-

# TABLE OF AUTHORITIES

**Page**

## CASES

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
  1991 WL 427893 (S.D. Cal. May 6, 1991) ............................................................... 6

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*,
  480 F. Supp. 1195 (S.D.N.Y. 1979), *aff'd* 622 F.2d 1106 (2nd Cir. 1980) ........... 10

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................. 1, 8

*Boeing Co. v . Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................. 7, 8

*Bowers v. Transamerica Title Ins. Co.*,
  100 Wash.2d 581 (1983) .................................................................................. 12, 13

*Camden I Condominium Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ................................................................................... 9

*Central R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885) .................................................................................................. 7

*Chemical Bank v. City of Seattle (In re Washington Public Power Supply Sec. Litig.)*,
  19 F.3d 1291 (9th Cir. 1994) ............................................................................... 1, 6

*Chemical Bank v. Jaffe & Schlesinger, P.A.*,
  19 F.3d 1306 (9th Cir. 1994) ..................................................................................... 6

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................. 11

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ........................................................................... 18, 19

*Glass v. UBS Financial Services, Inc.*,
  Case No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ............ 18

*Grays Harbor Adventist Christian School v. Carrier Corp.*,
  Case No. 05-05437 RBL (W.D. Wash. 2008) ................................................... 15, 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................. 13

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ....................................................................................... 17

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................... 9, 10

*In re Ampicillin Antitrust Litig.*,
  526 F. Supp. 494 (D.D.C. 1981) ............................................................................. 10

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re GNC Shareholder Litig.*,
    668 F. Supp. 450 (W.D. Pa. 1987) ........................................................ 17

4

*In re M.D.C. Holdings Sec. Litig.*,
    1990 WL 454747 (S.D. Cal. Aug. 30, 1990) .......................................... 6

5

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)............................................................. 6, 18

6

*In re Omnivision Techs., Inc.*,
    No. C-04-2297 SC, 2007 WL 4293467 (N.D. Cal. Dec. 6, 2007) .......... 6

7

*In re Pacific Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)................................................................... 10

8

*In re Phenylpropanolamine Prods. Liab. Litig.*,
    MDL Docket No. 1407 BJR, 2009 U.S. Dist. LEXIS 126729 (W.D. Wash.
    Sept. 18, 2009) ..................................................................................... 10

9

10

*In re Public Serv. Co. of New Mexico*,
    1992 WL 278452 (S.D. Cal. July 28, 1992) ........................................... 6

11

*In re Safety Components Int'l. Sec. Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 2001) ..................................................... 7, 13

12

13

*In re UEC Corp. Sec. Litig.*,
    Fed. Sec. L. Rep. P 94, 376, 1989 WL 73211...................................... 17

14

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975).................................................................. 13

15

*Krell v. Prudential Ins. Co.*,
    148 F.3d 283 (3d Cir. 1998).................................................................. 15

16

17

*Leonard v. Baumer (In re United Energy Corp. Sec. Litig.)*,
    Fed. Sec. L. Rep. P 94, 376, 1989 WL 73211 (C.D. Cal. March 9, 1989) ............... 17

18

*Morganstein v. Esber*,
    768 F. Supp. 725 (C.D. Cal. 1991)....................................................... 8, 9

19

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982)................................................................. 11

20

*Orser v. Select Portfolio Servicing, Inc.*,
    C 05-1507 RSL, 2009 U.S. Dist. LEXIS 112317 (W.D. Wash. Dec. 2, 2009) ..................... 18

21

22

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989)..................................................... 1, 6, 8, 9

23

*Pelletz v. Weyerhaeuser Co.*,
    Case Nos. C08-0334 JCC and C08-0403 JCC (W.D. Wash. 2009) ................. 15, 18

24

*Roberts v. Texaco*,
    979 F. Supp. 185 (S.D.N.Y. 1997) ...................................................... 13

25

26

2:10-cv-00590-TSZ
918123.3

- iii -

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

-iii-

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*Six Mexican Workers v. Arizona Citrus Growers,*
904 F.2d 1301 (9th Cir. 1990)..................................................................... 1, 6, 8, 9

4

*State of Fla. v. Dunne,*
915 F.2d 542 (9th Cir. 1990)................................................................................ 9

5

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003).................................................................... 7, 18, 19

6

*Sutton v. Bernard,*
504 F.3d 688 (7th Cir. 2007)................................................................................ 9

7

*Swedish Hosp. Corp. v. Shalala,*
1 F.3d 1261 (D.C. Cir. 1993) ............................................................................... 8

8

*Van Gemert v. Boeing Co.,*
516 F. Supp. 412 (S.D.N.Y. 1981) ..................................................................... 10

9

*Van Vranken v. Atl. Richfield Co.,*
901 F. Supp. 294 (N.D. Cal. 1995) ............................................................... 18, 19

10

*Vincent v. Hughes Air West., Inc.,*
557 F.2d 759 (9th Cir. 1977)............................................................................ 6, 17

11

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043 (9th Cir. 2002)..................................................................... passim

12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
396 F.3d 96 (2d Cir. 2005)........................................................................... 7, 13

13

*Weiss v. Mercedez-Benz of North America, Inc.,*
899 F. Supp. 1297 (D.N.J. 1995) ...................................................................... 13

**STATUTES**

29 U.S.C. § 1001 *et seq.*.................................................................................. 3

**TREATISES**

Conte, *Attorneys' Fee Awards*, § 2.08 at 50-51 (2d ed. 1977)................................... 17

Newberg, *Attorney Fee Awards* (1987) ........................................................... 7, 13, 17

14

15

16

17

18

19

20

21

22

23

24

25

26

2:10-cv-00590-TSZ
918123.3

- iv -

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

-iv-

## MEMORANDUM IN SUPPORT OF MOTION

## I.       INTRODUCTION

Having secured this $1,450,000 settlement on behalf of 133 Class Members (yielding an average net recovery of over $7,500 per Class Member), Class Counsel seek an attorneys' fee award of $362,500.  This amount represents 25 percent of the settlement fund, the Ninth Circuit's benchmark for fee awards in such circumstances.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Chemical Bank v. City of Seattle (In re Washington Public Power Supply Sec. Litig.*), 19 F.3d 1291, 1297 (9th Cir. 1994); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The amount represents a lodestar multiplier of 1.05, based on a total lodestar of $343,946.  Because Class Counsel will continue to perform work on this case for the benefit of the Class – assisting Class Members during the notice period, preparing and filing the motion for final approval of settlement, attending the final approval hearing, assisting the Settlement Administrator in disseminating payments to Class Members, and responding to further inquiries from Class Members – Class Counsel's lodestar will continue to increase by a meaningful amount in the coming months, resulting in an ultimate multiplier less than 1.05, and probably less than 1.00.

The requested award is reasonable under the common fund doctrine.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  Class Counsel have obtained an excellent result for the 133 Class Members.  Each of the Class Members who does not opt-out of the settlement will receive, after the requested fees, costs, and service payment are deducted, an average net amount of over $7,500.  Unsurprisingly, only one Class Member has objected to the settlement, and only one has opted out.  Declaration of Jahan C. Sagafi In Support of Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Costs, and Award of Class Representative Service Payment ("Sagafi Fee Decl."), ¶ 13.  No Class Member has objected to the requested attorneys' fees.  *Id.*, ¶¶ 13-14.

1    Class Counsel also seeks reimbursement of litigation expenses in the amount of

2    $13,206.  The costs were all incurred in connection with the prosecution of the action and the

3    execution of the settlement and are reasonable and proper.  No Class Member has objected to

4    Class Counsel's requests for costs, which was listed in the class notice as a request for "up to

5    $50,000" in costs.  *Id.*  In addition, Class Counsel will continue to incur costs for the benefit of

6    the Class (*e.g.*, travel to the final approval hearing, calls and communications with Class

7    Members), but because those costs have not yet been incurred, Class Counsel do not seek

8    reimbursement.

9    Finally, to recognize the time and effort that Plaintiff Jeff Sherrill expended for the

10   benefit of the Class Members, the results he made possible for them, and the risks he accepted by

11   leading the litigation, Plaintiff requests a service payment of $5,000.  Given Mr. Sherrill's

12   significant contributions to Counsel's efforts (including providing documents and information,

13   guiding Counsel's approach to document discovery, describing Premera's organizational structure

14   and its policies and practices regarding Class Member job duties, responding to witnesses'

15   requests for more information about the litigation, and attending and contributing to Counsel's

16   arguments in the mediation), culminating in the pending $1,450,000 settlement, and viewed in

17   light of well-established standards for such awards, the amount sought is reasonable.  No Class

18   Member has objected to the requested service payment.  *Id.*

19   **II.    BACKGROUND**

20        **A.    Class Counsel Carefully Analyzed The Case Before Beginning Settlement
               Negotiations.**

21

22   The law firms of Lieff, Cabraser, Heimann & Bernstein, LLP and Frank Freed

23   Subit & Thomas LLP are Class Counsel in this case.  On April 7, 2010, on behalf of Plaintiff Jeff

24   Sherrill, Class Counsel filed a complaint, alleging that Mr. Sherrill's employer, Premera Blue

25   Cross, as well as its subsidiaries LifeWise Health Plan of Oregon and LifeWise Assurance Co.

26   (collectively, "Premera"), misclassified a significant number of information technology workers

2:10-cv-00590-TSZ
918123.3                              -2-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") and the wage and hour laws of Washington. Complaint, ¶¶ 11-12, Docket No. 1. In addition, the complaint alleged that due to this misclassification, Premera violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq. Id.*, ¶¶ 21-22. Plaintiff brought these claims on a collective action and class action basis. *Id.*, ¶¶ 13-14.

Premera vigorously disputed, and continues to dispute, Plaintiff's allegations, contending that collective action certification and class certification were inappropriate, that it would prevail on the merits, and that damages were minimal. *See, e.g.,* Answer to Complaint, Docket No. 23.

The parties commenced discovery promptly following their June 29, 2010 Rule 26(f) Conference in order to assess the strengths and weaknesses of their respective arguments. Declaration of Jahan C. Sagafi in Support of Motion for Preliminary Approval of Class Settlement ("Sagafi Preliminary Approval Decl."), ¶ 12, Docket No. 35. In the course of the investigation, Plaintiff obtained written and testimonial evidence regarding: (1) Class Members'[1] employment with Premera; (2) Premera's compliance with the FLSA, Washington wage and hour law, and ERISA; (3) Premera's policies and procedures regarding its classification of Class Members; (4) company policies and practices regarding recording of hours worked by Class Members; (5) the job tasks, assignments, duties, and functions of Class Members; and (6) hours worked and compensation paid to potential Class Members. *Id.* Class counsel reviewed and analyzed approximately 2,700 pages of documents including job descriptions, organizational charts and documents, and documents related to job positions and company classification decisions, as well as detailed data from Premera's payroll databases listing, by individual, job position, compensation, dates of employment, and other information. *Id.*, ¶¶ 12-13. In addition, Class Counsel conducted in-depth interviews with approximately a dozen witnesses, who

---

[1] The scope of discovery was sufficiently broad that Plaintiff was able to assess the strength of claims of the 133 Class Members as well as individuals in other job positions who were not included in the final class definition.

Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

provided detailed information about their own experiences (including job duties and hours worked), their coworkers' experiences, and Premera's employment policies and practices. Plaintiff also produced initial disclosures, comprising 78 pages of documents. *Id.*, ¶ 14.

After conducting this discovery, and after Class Counsel was thoroughly familiar with the strengths and weaknesses of the case, the parties began settlement discussions. The parties agreed to private mediation under the supervision of experienced mediator Teresa Wakeen of the Seattle firm of Wakeen & Associates. *Id.*, ¶ 17. Prior to this mediation, the parties exchanged detailed mediation briefs that included their respective assessments of the case. Plaintiff's mediation brief was the product of a substantial investment of time in researching applicable authority regarding the merits under federal and Washington law, collective action and class certification standards, damages issues (including hourly rate calculation, the fluctuating workweek method, a possible offset for bonuses, and liquidated damages), and statute of limitations issues. Sagafi Fee Decl., ¶¶ 18-19. Plaintiff also presented appendices containing damages analysis and supporting evidence, including eight witness statements. Sagafi Preliminary Approval Decl., ¶ 17. The mediation took place on November 17, 2010. *Id.* At the conclusion of this session, the parties reached a settlement in principle, which they memorialized in a memorandum of understanding. *Id.*, ¶ 18. Thereafter, the parties continued their arms-length negotiations to finalize the Settlement Agreement. *Id.*

## B. The Settlement Is Highly Beneficial To The 133 Class Members.

Each Class Member who does not opt out of the Settlement is eligible to receive a share of the $1.45 million settlement fund based upon a formula described in the Settlement Agreement, carefully designed to fairly compensate Class Members. (Settlement Agreement, § XII.A.2.) Assuming all 133 Class Members participate, the net average amount per Class Member—after deductions for the Class Representative Service Payment, the Class Counsel Attorneys' Fees and Costs Payment, and the costs of claim administration—will be more than $7,500. Sagafi Preliminary Approval Decl., ¶18. The entire settlement fund will be paid out;

2:10-cv-00590-TSZ
918123.3
-4-
**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

1    none will revert to Premera.

2         **C.    Class Counsel Devoted Substantial Time and Resources To This Litigation.**

3               During this litigation, Class Counsel have devoted 803.2 hours to the prosecution

4    of this action, with a lodestar value of $343,946.  Sagafi Fee Decl., ¶ 28, Exs. C & D; Declaration

5    of Michael C. Subit in Support of Motion Award of Attorneys' Fees, Reimbursement of Costs

6    and Expenses, and Award of Class Representative Service Payment ("Subit Decl."), ¶ 15.  Also,

7    Class Counsel paid $13,206 in out-of-pocket costs.  Sagafi Fee Decl., ¶ 30, Ex. E.

8               Class counsel expended this effort and this money without any guarantee of

9    recovery.  Sagafi Fee Decl., ¶ 20.  Class counsel also gave up the opportunity to pursue other

10   work during this time period, in order to prosecute Plaintiff's and the Class Members' claims.  *Id.*

11   By the time this Motion is heard, these figures will have meaningfully increased due to additional

12   work performed by Class Counsel for the Class Members' benefit.

13        **D.    Class Member Response To The Settlement And The Requests for Fees,
              Costs, And A Service Award Has Been Overwhelmingly Positive.**

14

15               On March 14, 2011, well ahead of schedule, individualized notice of the proposed

16   Settlement was sent to each Class Member by mail.  The notice explained:

17                    Class Counsel will ask the Court for attorneys' fees of up to
                      $362,500 and out-of-pocket costs of up to $50,000, according to the
18                    terms of the Settlement Agreement.  The attorneys' fees and costs,
                      as awarded by the Court, shall be paid from the $1,450,000 fund
19                    created by the settlement.  In addition, Class Counsel will apply to
                      the Court for a service award of up to $5,000 for the lead Plaintiff,
20                    Jeff Sherrill, who represents the Class.

21

22   *See* Docket No. 35, Ex. A to Ex. 1.  Class Members are afforded 45 days (until April 28, 2011)

23   during which to decide whether to do nothing, object, or opt out of the Settlement.  Thus far, only

24   one Class Member has objected to the settlement.  Sagafi Fee Decl., ¶ 9.  No Class Member has

25   objected to the requested attorneys' fees, costs, or service payment.  *Id.*, ¶¶ 9-10.  This high

26   approval rate reflects the Class Members' strong support for the settlement, and demonstrates that

-5-

the request for fees, costs, and service award is reasonable.

## III.    ARGUMENT

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys fees." *Vincent v. Hughes Air West., Inc*., 557 F.2d 759, 769 (9th Cir. 1977); *see also Chemical Bank v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994). The traditional method for calculating a fee award in common fund cases is to award counsel a percentage of the total fund. *See Blum*, 465 U.S. at 900 n.16.

In the Ninth Circuit, 25 percent of the common fund is the "benchmark" for an attorneys' fees award. *See, e.g., Vizcaino*, 290 F.3d at 1047; *Chemical Bank v. City of Seattle* (*In re Washington Public Power Supply Sec. Litig.*), 19 F.3d 1291, 1297 (9th Cir. 1994); *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *Six Mexican Workers*, 904 F.2d at 1311. Of course, a benchmark is not a requirement, and courts frequently award fees greater than this amount. *See, e.g., In re Omnivision Techs., Inc.*, No. C-04-2297 SC, 2007 WL 4293467, at *10 (N.D. Cal. Dec. 6, 2007) ("[I]n most common fund cases, the award exceeds that [25%] benchmark"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *In re Public Serv. Co. of New Mexico*, 1992 WL 278452, at *1, *12 (S.D. Cal. July 28, 1992) (awarding one-third); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 WL 427893, at *1, *4 (S.D. Cal. May 6, 1991) (awarding one-third); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *1, *10 (S.D. Cal. Aug. 30, 1990) (awarding 30%). Here, the requested award of $362,000 represents 25% of the settlement fund, equal to the Ninth Circuit's benchmark.

Courts sometimes employ a lodestar cross-check to confirm the reasonableness of a percentage-based fee. *See Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Here, the lodestar cross-check results in a

1    multiplier of 1.05, which is reasonable, since it is significantly lower than fee multipliers

2    approved in many other cases.  *See id.* at 1051 (approving multiplier of 3.65 and citing recent

3    cases approving multipliers as high as 19.6); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d

4    96, 123 (2d Cir. 2005) (approving multiplier of 3.5); *In re Safety Components Int'l. Sec. Litig.*,

5    166 F. Supp. 2d 72, 104 (D.N.J. 2001) (approving multiplier of 2.81 and citing cases approving

6    multipliers from 2.04 to 3.6); *see also* Newberg, *Attorney Fee Awards,* § 14.03 at 14-5 (1987)

7    ("multiples ranging from one to four are frequently awarded in common fund cases when the

8    lodestar method is applied.").

9        A.    **Counsel Are Entitled To an Award of Attorneys' Fees From the Common Fund.**

10

11            1.    **The Equitable Common Fund Doctrine Applies When, As In This Case, The Litigation Has Recovered A Certain And Calculable Fund On Behalf Of A Group Of Beneficiaries.**

12

13           For well over a century, federal and state courts have recognized that when

14    counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed

15    class members, counsel have an equitable right to be compensated from that fund as a whole for

16    their successful efforts in creating it.  *See, e.g., Boeing Co. v . Van Gemert*, 444 U.S. 472, 478

17    (1980) (observing that the United States Supreme Court "has recognized consistently that a

18    litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee

19    from the fund as a whole"); *Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)

20    (recognizing common fund doctrines); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003)

21    (same).

22           The common fund doctrine rests on the understanding that attorneys should

23    normally be paid by their clients.  *Boeing*, 444 U.S. at 478.  Where the attorneys' unnamed class

24    member clients have no express retainer agreement, those who benefit from the fund without

25    contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common

26    fund.  *Id.*

1    This litigation has resulted in a settlement fund of $1,450,000 to be distributed to

2  the 132 participating Class Members, none of whom has paid Class Counsel fees for its efforts

3  during the litigation.  Equity requires them to pay a reasonable fee, based on what the market

4  would traditionally require, no less than if they had hired private counsel to litigate their cases

5  individually.  *Id.* at 479-481.

6           **2.      The Fee Award Should Be Calculated As A Percentage Of The**
                       **Common Fund.**
7

8    The fairest way – and the way that best promotes efficiency in litigation - to

9  calculate a reasonable fee when contingency fee litigation has produced a common fund is by

10 awarding Class Counsel a percentage of the total fund.  *See, e.g., Blum*, 465 U.S. at 900 n.16; *Six*

11 *Mexican Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a percentage of

12 the recovery"); *Paul, Johnson, Alston & Hunt,* 886 F.2d at 272; *Morganstein v. Esber*, 768 F.

13 Supp. 725, 728 (C.D. Cal. 1991).

14    The percentage of the fund method is appropriate for several reasons.  The

15 percentage method comports with the legal marketplace, where plaintiff's counsel's success is

16 frequently measured in terms of the results it has achieved.  *See Swedish Hosp. Corp. v. Shalala*,

17 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory

18 is often the true measure of [counsel's] success").  By assessing the amount of the fee in terms of

19 the amount of the benefit conferred on the class, the percentage method "more accurately reflects

20 the economics of litigation practice" which, "given the uncertainties and hazards of litigation,

21 must necessarily be result-oriented."  *Id.* (internal quotation marks and citation omitted).

22    Individuals who lack the resources to hire counsel by the hour typically secure

23 legal representation by agreeing to payment of the fee in the form of a percentage of any

24 recovery.  The percentage of the fund approach mirrors this aspect of the market and,

25 accordingly, reflects the fee that would have been negotiated by the class members in advance,

26 had such negotiations been feasible, given the prospective uncertainties and anticipated risks and

burdens of the litigation.  *See, e.g., Paul, Johnson, Alston & Hunt*, 886 F.2d at 271; *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007).

This percentage approach to common fund fee awards has other benefits and advantages as well.  Most notably, it aligns the incentives of the class and its counsel and thus encourages counsel to spend their time efficiently and to focus on maximizing the size of the class's recovery, rather than their own lodestar hours.  *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *see also Vizcaino*, 290 F.3d at 1050 n.5 ("[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."); *State of Fla. v. Dunne*,  915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases"); *Camden I Condominium Ass'n. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ("[E]very Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis.").  The percentage method is also easier for courts to calculate than any alternative method.  *Id.*; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

In light of these benefits, courts have resoundingly approved the percentage of the fund method for calculating a reasonable fee award in common fund cases.  In this case, Plaintiff respectfully submits that the award of counsel's common fund fees should be assessed as a percentage of the total fund that will be distributed to the class.

**B.**    **The Requested Fee Award Equals the 25 Percent Benchmark Established By The Ninth Circuit.**

In determining what constitutes a reasonable percentage of a settlement fund for purposes of calculating common fund fees, the Ninth Circuit has stated that courts look to a "benchmark" percentage of 25 percent of the total fund.  *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers*, 904 F.2d at 1311; *Morganstein*, 768 F.

2:10-cv-00590-TSZ
918123.3

-9-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

1  Supp. at 728; *In re Phenylpropanolamine Prods. Liab. Litig.*, MDL No. 1407 BJR, 2009 U.S.

2  Dist. LEXIS 126729 (W.D. Wash. Sept. 18, 2009) ("In the 9th Circuit, the customary benchmark

3  for a lodestar calculation is 25%.").[2]  Here, Class Counsel is asking for an amount – 25 percent of

4  the fund – that is precisely in line with the Ninth Circuit's established benchmark.

5      **C.**    **The Requested Fee Award Is Reasonable.**

6         The requested percentage of the common fund is justified by the financial risks

7  undertaken by Plaintiff's counsel in this litigation.  Counsel accepted and litigated this action

8  solely on a contingency fee basis, and has received no compensation for the outlay of attorney

9  time, nor for any of the expenses incurred.  Moreover, there has never been any guarantee that

10  Counsel would ever be paid for that time or reimbursed for those costs.  No matter how many

11  hours put in, no matter how burdensome the litigation, there would be no payment unless Plaintiff

12  prevailed.

13         This litigation involved significant risk and complexity.  Sagafi Fee Decl., ¶18.

14  The complaint alleged that Premera had failed to pay overtime to current and former information

15  technology employees, who worked on a many separate job titles at many different Premera

16  locations.  *Id.*  Premera asserted several defenses, including contending that the Class Members'

17  different job titles and positions would make certifying this action as a class action difficult, that

18  the company was entitled to a "bonus offset," that the fluctuating workweek method of

19  _____

20  [2] In approving an award of 28 percent of the $96,885,000 settlement fund, the *Vizcaino* court surveyed attorneys' fees awards in so-called "megafund" cases – i.e., common fund settlements

21  of $50-200 million – during the years (1996-2001).  *Vizcaino*, 290 F.3d at 1046 n.1 & Appendix. In this megafund range, a majority of fee awards were "clustered in the 20-30 percent range."  *Id.*

22  at 1050 n.4 & Appendix.  The court recognized the so-called "increase-decrease rule"; that is, the percentage of an award generally decreases as the common fund increases.  *Id.* at 1047.  In

23  common fund settlements of less than $50 million, such as this one, a higher percentage is often awarded.  *See, e.g., In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)

24  (affirming an award equal to 33 % of the common fund); *In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (awarding plaintiffs' counsel 32.8 % of the common fund created to settle the litigation);

25  *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (awarding 45 % of $7.3 million settlement fund); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp.

26  1195, 1199 (S.D.N.Y. 1979), *aff'd* 622 F.2d 1106 (2nd Cir. 1980) (approximately 53 % of settlement fund awarded); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981).

2:10-cv-00590-TSZ
918123.3
-10-
**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

1    calculating damages should apply, that liquidated damages were not recoverable due to Premera's

2    good faith, and that the statute of limitations should be narrowed to the two years provided for

3    non-willful violations under the FLSA. *Id.*, ¶¶ 18-19.

4              The reasonableness of this fee award is further supported by the high quality of

5    Class Counsel's legal representation. The efforts expended by Class Counsel in this case are

6    described above and in the Declarations of Jahan C. Sagafi and Michael C. Subit. As these

7    Declarations reflect, Class Counsel's diligent and efficient pursuit of this matter positioned

8    Plaintiff to successfully settle this case for $1.45 million, to provide meaningful redress for the

9    133 Class Members, and to avoid the expense, risk, and delay of protracted litigation.

10             The response of the Class also supports a decision that the fee request is

11    reasonable. The requested fees and costs were clearly stated in the class notice mailed to each

12    Class Member. Class Members will have over six weeks to object to Class Counsels' request for

13    fees and costs. No objections to fees or costs sought have been received by counsel or the claims

14    administrator. Sagafi Fee Decl., ¶¶ 13-14. In fact, just one Class Member has objected to the

15    settlement agreement, and only one other has opted out. *Id.* Notably, the objector argues that

16    Plaintiff's claims are not meritorious, underscoring the difficulty of the litigation and the

17    substantial risks facing Plaintiff had no settlement been reached. *Id.* at ¶ 14. Such a statement

18    further supports the reasonableness of the fee request. The absence of any objections to the fees

19    and costs requested supports the conclusion that the requested award is reasonable. *See e.g.,*

20    *Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) (affirming district court's order

21    approving settlement agreement and allocation plan over objections by several groups of

22    bondholders); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) (affirming

23    district court's order approving consent decree over objections by a class representative).

24             Finally, the requested fee is reasonable when compared with fees awarded in other

25    technical support worker misclassification collective and class actions. To illustrate, below is a

26    chart of fees awarded in recent class action settlements on behalf of technical support workers

2:10-cv-00590-TSZ
918123.3

-11-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

alleging misclassification claims under the FLSA and state law:

| Case[3] | Settlement Amount | Fee Awarded | Percentage |
|---|---|---|---|
| *Walsh v. Apple, Inc.* | $900,000 | $225,000 | 25% |
| *Russell v. Wells Fargo & Co.* | $1.7 m | $802,403 | 47% |
| *Danieli v. IBM Corporation.* | $7.5 m | $2.25 m | 30% |
| *Higazi v. Cadence Design Systems, Inc.* | $7.7 m | $1.9 m | 25% |
| *Doyle v. AT&T Services, Inc.* | $10.5 m | $3.15 m | 30% |
| *Gerlach v. Wells Fargo & Co.* | $12.8 m | $3.2 m | 25% |
| *Rosenburg v. IBM Corp.* | $65.0 m | $16.25 m | 25% |

**D.     The Requested Fees Are Reasonable Under A Lodestar Crosscheck.**

A cross-check of the percentage-based fee by comparison to Class Counsel's lodestar confirms that the requested fee is reasonable.  *See Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award").  "Under the lodestar/multiplier method, the district court first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate."  *See e.g. Bowers v. Transamerica Title Ins. Co.*, 100 Wash.2d 581, 597-99 (1983).  After examining the time and labor required, the Court may apply a multiplier to the lodestar in light of certain factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[3] The opinions setting forth the fee award in each case listed in the chart are Exhibits I-O to the Sagafi Fee Declaration.

2:10-cv-00590-TSZ
918123.3                                              -12-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (a lodestar figure "may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment") (citing *Kerr*); *Bowers*, 100 Wash.2d at 597-99.

Plaintiff's raw lodestar is $343,946. Sagafi Fee Decl., ¶ 28. Thus, the requested fee results in a lodestar multiplier of 1.05. A 1.05 multiplier is lower than the typical multiplier in common fund settlements such as this one. *See Vizcaino*, 290 F.3d at 1051 (approving multiplier of 3.65 and citing recent cases approving multipliers as high as 19.6); *Wal-Mart Stores*, 396 F.3d at 123 (approving multiplier of 3.5); *In re Safety Components Int'l. Sec. Litig.*, 166 F. Supp. 2d at 104 (approving multiplier of 2.81 and citing cases approving multipliers from 2.04 to 3.6); *Weiss v. Mercedes-Benz*, 899 F. Supp. 1297 (D.N.J. 1995) (approving multiplier of 9.3); *Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving multiplier of 5.5); *see also* 3 Newberg § 14.03 at 14-5 ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."). Furthermore, taking Class Counsel's future efforts into account, the lodestar multiplier will decrease to below 1.05, and likely below 1.00.

Consideration of the *Kerr* and *Hanlon* factors demonstrates that such a modest multiplier is warranted:

### 1. Time And Labor Required

The accompanying Declarations of Jahan C. Sagafi and Michael C. Subit set forth the number of hours and rates used to calculate Class Counsel's lodestar. As described in those declarations, Class Counsel have together devoted 803.2 hours to this litigation. Sagafi Fee Decl., ¶¶ 24,28, Exs. C & D; Subit Decl,. ¶ 15. In reaching this figure, Class Counsel have exercised billing judgment, ensuring that only time appropriately charged to a paying client was included. Sagafi Fee Decl., ¶ 23; Subit Decl., ¶ 16. In addition, Class Counsel allocated work within the team efficiently to avoid duplication of effort. *Id.* Moreover, the attached declarations report

2:10-cv-00590-TSZ
918123.3

-13-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

1  time only through April 11, 2011, and thus do not include the many hours of additional time that

2  Class Counsel will continue to spend securing final approval of the settlement, counseling Class

3  Members about it, and monitoring the distribution of payments

4         The 803.2 hours Class Counsel have expended thus far on this case were

5  reasonably spent.  Class Counsel: (1) interviewed Plaintiff Sherrill and other witnesses and

6  researched their claims; (2) prepared and filed the Complaint; (3) developed the strategy for

7  prosecuting the claims in this case; (4) located, contacted, interviewed, and drafted declarations

8  for Class Member witnesses; (5) reviewed thousands of pages of corporate documents; (6)

9  conducted extensive meet and confer efforts regarding discovery issues; (7) laid the groundwork

10  for, prepared for, and attended mediation; (8) conducted detailed analyses of Premera's data

11  before, during, and after mediation; (9) participated in post-mediation settlement negotiations;

12  (10) took the lead in drafting the settlement agreement and the class notice; (11) guided the

13  Settlement Administrator in implementation of the Settlement; and (12) responded to Class

14  Member inquiries throughout the litigation.  Sagafi Fee Decl., ¶¶ 19-21.  The last two tasks are

15  ongoing, and Class Counsel's lodestar does not include the work these will require in the future.

16              **2.      The Novelty And Difficulty Of The Questions Involved**

17         Technical support worker misclassification collective and class actions are

18  particularly complex and necessarily involve substantial risk.  Here, the complexity of Class

19  Members' job duties and the different job titles and duties involved created a substantial risk that

20  Plaintiff and the Class Members would not recover at trial.  In addition, Premera raised several

21  challenging defenses beyond the initial question of exemption classification, such as whether the

22  company was entitled to a "bonus offset" for the bonuses it had paid to exempt employees and

23  whether the fluctuating work week method of calculating damages applied.  Sagafi Fee Decl., ¶¶

24  18-19.  While Plaintiff believes that he would have prevailed on the certification, liability, and

25  damages questions, that outcome was by no means assured.

26

### 3.    The Requisite Legal Skill Necessary

Due to the complexity of these issues, this case required Class Counsel well-versed not only in complex class action litigation but also in the unique issues that arise in the overtime misclassification context for technical support workers. Class Counsel has prosecuted several such cases, Sagafi Fee Decl., ¶ 5, and understands the legal issues involved in demonstrating commonality among technical support workers in different job titles, establishing liability based on the nature of their job duties and the applicable precedent, and calculating damages.

### 4.    The Preclusion of Other Employment

In addition to the time and labor expended on legal analysis, Class Counsel expended significant amounts of time on the litigation. Sagafi Fee Decl., ¶ 20. Prosecution of this litigation precluded Class Counsel from accepting other potentially profitable work. *Id.*

### 5.    The Customary Fee

The modest multiplier requested by Class Counsel falls well within the range of multipliers approved by Ninth Circuit courts. *See Vizcaino*, 290 F.3d at 1052–54 (approving multiplier of 3.65 and citing a survey of class settlements from 1996-2001 indicating that most multipliers range from 1.0 to 4.0); *Grays Harbor Adventist Christian School v. Carrier Corp.*, Case No. 05-05437 RBL (W.D. Wash. 2008) (approving multiplier of 1.24) (*see* Sagafi Fee Decl., Ex. F); *Pelletz v. Weyerhaeuser Co.*, Case Nos. C08-0334 JCC and C08-0403 JCC (W.D. Wash. 2009) (approving multiplier of 1.82) (*see* Sagafi Fee Decl., Ex. H); *Krell v. Prudential Ins. Co.*, 148 F.3d 283, 341 (3d Cir. 1998) (recognizing that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."). In light of the range of multipliers commonly approved by courts within the Ninth Circuit, Plaintiff's fee request is reasonable.

The rates used in calculating the lodestar are likewise reasonable. Class Counsel's experience, reputation, and ability, detailed in the accompanying declarations and described in the firm resumes justify the rates charged. Sagafi Fee Decl., ¶¶ 5-12, Exhibit A; Subit Decl., ¶¶ 3-12.

2:10-cv-00590-TSZ
918123.3

-15-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

1    Furthermore, these rates are commensurate with those prevailing in the applicable market for

2    attorneys with comparable skill and experience litigating complex wage and hour class and

3    collective and class actions.[4]  Sagafi Fee Decl., ¶ 26; Subit Decl., ¶ 13.  These hourly rates have

4    been paid to counsel by paying clients, and have been approved by other courts.  Sagafi Fee

5    Decl., ¶ 19.  In fact, Class Counsel's hourly rates have been approved in three different class

6    action settlements by courts in this District.  Sagafi Fee Decl, ¶ 25, Exs. F, G, & H.

7

            **6.**      **Whether the Fee is Contingent**

8           Class Counsel undertook this class action on a purely contingent basis, with no

9    assurance of recovering expenses or attorneys' fees.  Sagafi Fee Decl., ¶ 20.  Despite this lack of

10    assurance, Class Counsel expended considerable time and resources to prosecute the case

11    successfully.

12

            **7.**      **Additional Factors**

13           Several additional Kerr factors support the requested fee.  Class Counsel achieved

14    these results quickly and efficiently.  As the Ninth Circuit held in *Vizcaino*, class counsel should

15    not "receive a lesser fee for settling a case quickly; in many instances, it may be a relevant

16    circumstance that counsel achieved a timely result for class members in need of immediate

17    relief." 290 F.3d at 1050 n.5.  The results represent a significant recovery per person (over

18    $7,500).  As noted above, Class Counsel's experience, reputation, and ability, detailed in the

19    accompanying declarations and described in the firm resumes, justify the rates charged.  Sagafi

20    Fee Decl., ¶¶ 5-12, Exhibit A; Subit Decl., ¶¶ 3-12.  Finally, the fees awarded in similar cases

21    show that Class Counsel's request here is reasonable and in line with past precedent.

22

23    _____

[4] As set forth in Class Counsel's Declarations, the hourly rates of out-of-state counsel Lieff,

24    Cabraser, Heimann & Bernstein, LLP ("LCHB")'s attorneys are slightly higher than that of local
counsel, Michael C. Subit of Freed Frank Subit & Thomas LLP.  LCHB's billing rates of have
been approved routinely by federal courts around the country including in this District.  However,

25    even if LCHB's rates were lowered to match local counsel's rates, the lodestar would still be
$308,264, resulting in a multiplier of 1.17.  Under that alternate calculation, the requested fee of

26    $362,000 is still reasonable.  Sagafi Fee Decl., ¶ 29.

2:10-cv-00590-TSZ
918123.3

-16-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

**E.    Class Counsel Are Entitled To Recover Their Out-of-Pocket Expenses, Which Are Reasonable And Have Inured To The Benefit Of The Class.**

Class Counsel seeks reimbursement from the fund for the very modest out-of-pocket expenses incurred during this litigation.  Reimbursement for these expenses from the common fund is appropriate for the same reasons attorneys' fees should be paid out of the fund: all beneficiaries should bear their fair share of the costs of the litigation, and these are the normal costs of litigation that clients traditionally pay.  *See e.g., Leonard v. Baumer* (*In re United Energy Corp. Sec. Litig.*), Fed. Sec. L. Rep. P 94, 376, 1989 WL 73211, at *6 (C.D. Cal. March 9, 1989) (quoting Newberg, *Attorney Fee Awards,* § 2.19 (1987)); *see also Vincent*, 557 F.2d at 769 ("[T]he doctrine is designed to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the 'stranger' beneficiaries do not receive their benefits at no cost to themselves.").  Furthermore, attorneys may be reimbursed for reasonable out-of-pocket expenses that were "incidental and necessary to the representation of those clients."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

To date, Class Counsel have incurred approximately $13,206 in litigation costs and expenses and will incur additional costs through the conclusion of this matter.  Sagafi Fee Decl., ¶ 30, Ex. E.  These costs include filing fees, payment to the mediator, photocopying, telephone conference calls, mailing expenses, and other reasonable litigation-related costs.  *Id.*  This figure is very modest in light of the complexity and size of the action.

All of these costs were necessary in connection with the prosecution of this litigation and were made for the benefit of the Class.  Accordingly, they are reimbursable.  *See In re UEC Corp. Sec. Litig.*, Fed. Sec. L. Rep. P 94, 376, 1989 WL 73211, at *6; *In re GNC Shareholder Litig.*, 668 F. Supp. 450, 452 (W.D. Pa. 1987); Conte, *Attorneys' Fee Awards*, § 2.08 at 50-51 (2d ed. 1977).  These costs are quite reasonable for a case of this duration and complexity and should be reimbursed in full.

2:10-cv-00590-TSZ
918123.3

-17-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

1

## F.      The Requested Class Representative Service Award is Reasonable.

2       "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a

3  class action settlement.  *Staton*, 327 F.3d 938 at 977.  Service or incentive payments constitute

4  "an essential ingredient of any class action," because they provide an incentive to bring important

5  cases that have a broad impact benefiting a class of individuals, not just the plaintiff.  *Cook v.*

6  *Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  These payments also recognize the plaintiff's time,

7  effort, and inconvenience, as well as the risk he is exposed to in asserting his and others' rights in

8  a particularly public and powerful manner.  By bringing the litigation on behalf of others in

9  addition to themselves, class representatives in employment class actions provide a valuable

10  service to their fellow workers.  More broadly, they promote the public policy goals set forth by

11  the legislatures that enacted the underlying substantive statutes at issue.

12       For these reasons, the Ninth Circuit and other federal courts have routinely

13  approved the award of service payments to class representatives for their assistance to a plaintiff

14  class.  *See, e.g., id.* (approving award of $25,000 to the class representative); *Glass v. UBS*

15  *Financial Services, Inc.*, Case No. C-06-4068 MMC, 2007 WL 221862, at *16-17 (N.D. Cal. Jan.

16  26, 2007) (approving award of $25,000 per class representative); *Van Vranken v. Atl. Richfield*

17  *Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (granting an award of $50,000 to the class

18  representative); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *see also*

19  *Staton*, 327 F.3d at 976-77 (collecting cases); *Orser v. Select Portfolio Servicing, Inc.*, C 05-1507

20  RSL, 2009 U.S. Dist. LEXIS 112317 (W.D. Wash. Dec. 2, 2009) (approving $5,000 award to the

21  class representative); *Pelletz*, Case Nos. C08-0334 JCC & C08-0403 JCC (approving $7,500

22  award to the class representatives) (*see* Sagafi Decl., Ex. H); *Grays Harbor*, Case No. 05-05437

23  RBL (approving $3,500 award to class representatives) (*see* Sagafi Fee Decl., Ex. F).

24       When evaluating the reasonableness of an incentive award, courts may consider

25  factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree

26  to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff

2:10-cv-00590-TSZ
918123.3

-18-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (*quoting Cook*, 142 F.3d at 1016); *see also Van Vranken*, 901 F.Supp. at 299.

Here, the modest service payment of $5,000 sought under the proposed settlement reflects the considerable efforts by Mr. Sherrill in making possible a valuable settlement for 132 other Class Members (the vast majority of whom likely first learned of this litigation through the settlement notice), expending significant time and effort, and subjecting himself to risk of workplace retaliation. Sagafi Fee Decl., ¶¶ 15-17. For the past year, Mr. Sherrill has actively participated in the case by, for example, discussing the facts of the case with Class Counsel, providing documents and information to Class Counsel, assisting in crafting document requests and understanding documents and data produced by Premera in discovery, and assisting Class Members seeking information about the case. *Id.* His assistance was particularly critical in helping Class Counsel understand the structure of Premera's information technology department, using charts provided by the company, and in understanding the nature of his and his co-workers' job duties, using templates and other documents produced either by Mr. Sherrill or by the company. *Id.*, ¶ 16. Mr. Sherrill and Class Counsel were in regular contact about the progress of the litigation and strategic issues as they arose. *Id.* Furthermore, Mr. Sherrill attended the full-day mediation. *Id.*, ¶ 17. During the mediation, he participated in evaluating Premera's arguments with Class Counsel, which was helpful in enabling Class Counsel to assess the strengths and weaknesses of Premera's positions. *Id.* Lastly, all of Mr. Sherrill's actions were taken against the background of his concerns about potential retaliation by his employer and by future potential employers should he ever leave Premera.

In short, Mr. Sherrill's participation in the litigation was critical to its success. It literally would not have existed without him. The requested service payment is modest, especially in light of the substantial Class recovery and applicable precedent.

Finally, the notice sent to Class Members stated that "Class Counsel will apply to

2:10-cv-00590-TSZ
918123.3

-19-

**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000

the Court for a service award of up to $5,000 for the lead Plaintiff, Jeff Sherrill, who represents the Class."  Joint Stipulation of Class Settlement and Settlement Agreement (Docket No. 35), Ex. A to Exhibit 1.  No Class Members objected to the Class Representative Service Award.  Sagafi Fee Decl., ¶¶ 13-14.

## IV.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court issue an order approving the payment of $362,000 as reasonable attorneys' fees, the payment of $13,206 as reasonable costs, and the payment of $5,000 as a Class representative service payment.

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN

Dated:  April 14, 2011                 By:  ___/s/ Jahan C. Sagafi_____
                                            Jahan C. Sagafi

Kelly M. Dermody (*admitted pro hac vice*)
Jahan C. Sagafi (*admitted pro hac vice*)
Anne B. Shaver (*admitted pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: jsagafi@lchb.com
E-Mail: ashaver@lchb.com

Michael C. Subit (Wash. Bar No. 29189)
FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, WA 98104-0401
Telephone:  (206) 682-6711
Facsimile:   (206) 682-0401
E-Mail: msubit@frankfreed.com

*Attorneys for Plaintiff and the Class Members*

2:10-cv-00590-TSZ
918123.3
-20-
**Lieff, Cabraser, Heimann & Bernstein, LLP**
275 Battery St., 29th Floor
San Francisco, CA 94111
415-956-1000